CECILE HANSEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hansen v. Commissioner
Docket No. 3753-73.
United States Tax Court
T.C. Memo 1976-84; 1976 Tax Ct. Memo LEXIS 320; 35 T.C.M. (CCH) 357; T.C.M. (RIA) 760084; March 17, 1976, Filed Louis J. Marrero, for the petitioner. H. Stephen Kesselman, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a deficiency of $6,497 in the 1969 income tax of Raymond G. Hansen and Cecile Hansen. We must decide whether Cecile Hansen signed under duress the Form 1040 which reported for 1969 her income and that of her former husband Raymond. FINDINGS OF FACT The parties have filed a stipulation *321 of facts which, together with the attached exhibits, is incorporated herein by this reference. Cecile Hansen, the petitioner, resided in Brooklyn, New York, at the time she filed her petition in this case. Petitioner and Raymond Hansen were married from July, 1963, until April, 1972. Their marriage was dissolved by a final decree of divorce granted to petitioner "by reason of the cruel and inhuman treatment" inflicted on her by Raymond. It appears that Raymond drank so heavily that he became intoxicated almost every day. And although he was "all right" when sober, he "became quite violent when he was drinking" and sometimes assaulted petitioner. Raymond, as sole proprietor, operated a trucking business which was the source of his earnings. Petitioner also had earnings, as an employee of the New York Telephone Company. She thus received $7,630.03 wages in 1969, from which Federal income tax in the amount of $1,289.55 had been withheld. She had a dependent mother during that year. The deficiency determined by the Commissioner for 1969 in respect of a purported joint return of the spouses, hereinafter more fully described, was based upon four adjustments, all of which related to *322 the husband's affairs. Raymond and Cecile Hansen had filed joint Federal income tax returns for years prior to 1969. These returns, as well as the controverted 1969 return, were prepared by Raymond's accountant. After preparing the return for each year prior to 1969, the accountant would review the document with Cecile and answer her questions concerning the return before she signed it. However, although the same accountant prepared the 1969 return, he never presented it to petitioner for her scrutiny before she was required to sign it. Instead, late on the night of April 15, 1970, Raymond came home "quite drunk", threw the return on the table, and told petitioner to sign it. When petitioner sought to review the return before signing, Raymond responded with a second order to sign. Still petitioner protested. But when Raymond ordered her for the third time to sign, because of "the manner that he said it", she gave in and signed. She thus yielded because of fear of bodily harm from her husband. All of petitioner's income -- wages from which Federal income and F.I.C.A. taxes had been withheld -- was included on the return, and her mother was claimed as a dependent thereon. Petitioner *323 filed no other Federal income tax return for the tax year 1969, but she did file a separate return for 1970 in order to avoid the "hassle" of the previous year. She and Raymond were divorced before her 1971 return was due. As indicated above, all of the adjustments made by the Commissioner in the notice of deficiency relate to Raymond's separate income and expenses. Three of the adjustments disallow deductions for expenses connected with his business and the fourth adjustment disallows a deduction for alimony which had been claimed apparently in respect of a former wife. Petitioner knew that her husband was in the moving business but she had no access to the books and records of his business and had no knowledge of his income and expenses. Petitioner admits that she is unable to challenge the Commissioner's adjustments to the income disclosed by the 1969 return, but she claims that she is not liable for any part of the deficiency resulting from these adjustments because she signed the return under duress. ULTIMATE FINDING OF FACT Cecile Hansen signed the 1969 Form 1040 as a joint return with her husband only because she feared physical injury from her husband if she refused to *324 sign. OPINION The parties to a joint return are jointly and severally liable for the tax imposed on the aggregate income required to be reported thereon. Section 6013(d)(3), I.R.C. 1954. However, a Form 1040, although signed by both spouses and designated on its face as a joint return, does not create joint and several liability with respect to a spouse whose signature on the return was executed under duress. Lola I. Brown,51 T.C. 116, 119 and cases cited therein. We find that petitioner Cecile Hansen signed the return involved herein under duress, and therefore we hold that she is not liable for any part of the deficiency which has been determined in respect of that return. It has been stated that in order to establish that her signature was executed under duress, the wife must show both (1) that she was unable to resist demands to sign the return, and (2) that she would not have signed the return except for the constraint applied to her will. Lola *325 I. Brown,supra,51 T.C. at 119; Hanzel Stanley,45 T.C. 555, 562. The voluntariness of her actions is to be measured by a wholly subjective standard, i.e. "whether the pressure applied did in fact so far affect the individual concerned as to deprive [her] of contractual volition." 17 C.J.S. Contracts Sec. 175; Furnish v. Commissioner,262 F. 2d 727, 733 (C.A. 9), affirming in part and remanding in part, 29 T.C. 279; Lola I. Brown,supra,51 T.C. at 119. Petitioner's husband, Raymond Hansen drank too much too often. When drunk, he sometimes assaulted petitioner. Late on the night of April 15, 1970, he came home drunk and ordered petitioner to sign a tax return Form 1040 for the year 1969. Petitioner at first protested that she wanted to review the return before signing it, as she had done in previous years, but in the face of Raymond's repeated demands she eventually signed without examining the return. Although there is considerable force to the Government's position, we think that the scales tip in petitioner's favor. Cases in this field turn upon the peculiar factual situations involved, and it is not always *326 easy to reconcile the decisions dealing with this issue. Our conclusion herein is based upon the evidence before us with particular emphasis upon our evaluation of petitioner's credibility as a witness. We carefully observed her general appearance and demeanor at trial. Her simple and direct testimony, even though at times in response to leading questions, impressed us as truthful. On the basis of this observation, in the context of the record as a whole, we have found as an ultimate fact that petitioner signed the return because she feared "physical bodily harm from [her] husband." This factual finding establishes both of the material elements of duress required by the test set forth in Lola Brown.
Petitioner's fear of physical abuse is precisely what rendered her unable to resist demands that she sign the return. [1] And, the fact that she objected to signing the return because she was not permitted to check it over establishes that she was unwilling to sign the return except for the constraint applied to her will. [2] Furthermore, petitioner filed a separate return for the very next tax year, even though she was still married to Raymond; and she obtained a final divorce before *327 her 1971 return was due. [3]
*328 Having decided that petitioner has established both elements of the defense of duress, we now consider the Commissioner's final contention: even if petitioner signed the return under duress, she is nevertheless bound by her signature if she intended the form which she signed to be her income tax return for the year 1969. Elsie S. Bour,23 T.C. 237. To show that petitioner did intend the form which she signed to be her income tax return, the Government points to the following facts: petitioner's income was included on the return; a credit for income tax withheld from her wages was claimed on the return; a dependency exemption deduction in respect of her mother was claimed on the return; and, petitioner filed no other income tax return for 1969. These factors have been recognized as some indication that a taxpayer intends a return to be his own. Irving S. Federbush,supra,34 T.C. at 756; Estate of Merlin H. Aylesworth,supra,24 T.C. at 146. The point is a troublesome one, and we reach our conclusion in petitioner's favor without strong confidence. However, it is our best judgment on the record, taking into account our observation of the petitioner, *329 that she executed the joint return under duress and that she didn't intend it to be her return. That she did not thereafter file a separate return for 1969 can perhaps be explained by the fact that the taxes withheld from her wages appear to have been more than sufficient to discharge her income tax liability for 1969, notwithstanding that she was in any event required to file a return for that year. We need not decide whether petitioner intentionally or unintentionally failed to file some return for that year. Cf. Elsie S. Bour,supra,23 T.C. at 241. Nor do we hold that the fact that a spouse's earnings are subject to withholding is sufficient in every case to overcome the inference that might otherwise be drawn from the failure to file a separate return. We decide only that on this record petitioner did not intend the form before us to be her joint return for 1969. Decision will be entered for the petitioner.
Footnotes
1. While the degree of physical coercion or the threat thereof may vary from case to case, each case must be decided upon its own facts. Thus, it may be quite possible to find the absence of duress in some situations involving considerably more physical pressure than was present in others where a contrary finding is appropriate. Compare Lola I. Brown,supra,51 T.C. at 118, 120 (wife told to "sign it or else", and put in fear of her life by husband who describes himself as a "domineering, mean, asinine man"; held, duress) with Estate of Merlin H. Aylesworth,24 T.C. 134, 141↩ (in an ugly incident, husband assaulted wife, tore her clothes, and pulled out some of her hair, but wife resisted with a hatpin and called the police; held, no duress when return was signed the following day out of the husband's presence).
2. By contrast, in Hazel Stanley,supra,45 T.C. at 563↩, the petitioner "did not even state directly that she was unwilling or reluctant to sign" the return.
3. In those cases in which no duress was found, the wife had typically signed joint returns for a number of years in spite of her husband's supposedly intolerable conduct. Hazel Stanley,supra,45 T.C. at 563 (nine years); Irving S. Federbush,34 T.C. 740, 758 (six years); Estate of Merlin H. Aylesworth,supra,24 T.C. at 145-146↩ (four years). To be sure, petitioner signed joint returns for years prior to 1969. But she did so after checking them and discussing them with the accountant who had prepared them. There is no suggestion that they were not voluntarily executed, and indeed stand in sharp contrast to the 1969 return here in controversy.